1
2
3
4
5
6
7
8               UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ARTHUR INPRASIT aka ARTHUR NOP          No.  2:20-cv-00643 WBS KJN P
     LEW,
12
                    Petitioner,
13                                            FINDINGS & RECOMMENDATIONS

14         v.

     GISELLE MATTESON,
15
                    Respondent.
16

17   I.  Introduction

18         Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of

19   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his August 23, 2016,

20   conviction for assault with a deadly weapon.  (ECF No. 10-3 at 143-44, 146.)  On October 6,

21   2016, petitioner was sentenced to 14 years in state prison.  (Id. at 207-08.)  Petitioner makes six

22   claims in his habeas petition:  (1) there was insufficient evidence to convict; (2) the state appellate

23   court improperly upheld a "verdict" not rendered by the jury; (3) a due process violation and

24   ineffective assistance of counsel based on defendant's lack of knowledge that his conviction

25   would be reviewed under a different standard; (4) ineffective assistance of counsel for failing to

26   highlight exculpatory evidence and using a patently invalid legal theory; (5) a due process

27   violation for errors in jury instruction regarding circumstantial evidence; and (6) cumulative trial

28   errors deprived defendant of a fair trial.  (ECF No. 1.)  After careful review of the record, this

                                                      1

1   court concludes that the petition should be denied.

2   II.  Procedural History

3       On August 23, 2016, a jury found petitioner guilty of assault with a deadly weapon with

4   two related enhancements.  (ECF No. 10-3 at 143-44, 146.)  On October 6, 2016, petitioner was

5   sentenced to 14 years in state prison.  (Id. at 207-08.)

6       Petitioner appealed the conviction to the California Court of Appeal, First Appellate

7   District.  (ECF No. 10-8 at Exs. 3-5.)  The Court of Appeal affirmed the conviction on July 26,

8   2018.  (Id. at Ex. 6.)  Petitioner filed a petition for rehearing, which the Court of Appeal denied.

9   (Id. at Exs. 7-8.)

10      Petitioner filed a petition for review in the California Supreme Court, which the court

11  denied on November 16, 2018.  (Id. at Exs. 9-10.)  The United States Supreme Court denied his

12  petition for writ of certiorari on March 25, 2019.  (Id. at Ex. 11.)  Petitioner filed two state habeas

13  petitions.  The California Court of Appeal and California Supreme Court denied one (A151784

14  and S251193).  The California Court of Appeal ordered petitioner to show cause for resentencing

15  consideration on the other (A156377).

16      Petitioner filed the instant petition on March 18, 2020.  (ECF No. 1.)  Respondent filed a

17  reply, and petitioner filed a traverse.  (ECF Nos. 10 & 11.)

18  III.  Facts[1]

19      After independently reviewing the record, this court finds the appellate court's factual

20  summary accurate and adopts it herein.  In its unpublished memorandum and opinion affirming

21  petitioner's judgment of conviction on appeal, the California Court of Appeal for the First

22  Appellate District provided the following factual summary:

> Defendant was charged in an amended information, filed on August
> 4, 2016, with assault with a deadly weapon. (Pen. Code,[2] § 245, subd.
> (a)(1).) In connection with the charge, the information also alleged
> enhancements for personal infliction of great bodily injury (§
> 12022.7, subd. (a) ), personal use of a deadly weapon (§ 12022, subd.
> (b)(1) ), and various prior convictions including one strike.

---

[1]  The facts are taken from the opinion of the California Court of Appeal for the First Appellate District in People v. Lew, No. A149775, 2018 WL 3583540 (Cal. Ct. App. July 26, 2018), a copy of which was lodged by respondent as ECF No. 10-8 at Ex. 6.

[N.2 All statutory references are to the Penal Code unless otherwise indicated.]

The charge against defendant was based on a March 8, 2016 fight between him and Matthew H.  Matthew and Nicole S. had been in a long-term relationship and had lived with their two children and Nicole's adopted son. Shortly after Matthew and Nicole separated, defendant began a sexual relationship with Nicole. Defendant and Matthew had been friends prior to defendant's relationship with Nicole. However, when Matthew discovered defendant's relationship with Nicole, it triggered an exchange of threatening messages between Matthew, Matthew's brother, defendant, and Nicole. In part, Matthew texted defendant, "You're a target," and Matthew's brother sent defendant a Facebook message reading, "I'm going to send the goons, punk." Matthew's brother also texted Nicole that defendant's relationship with her was "a punishable offense" and "The streets will provide justice." In response, defendant called Matthew "retarded," and told him to "choose [your] words wisely because [I] don't play" and to "Bring it."

A few days prior to the fight, Matthew went to the Mission Solano homeless shelter where defendant sometimes stayed. Witnesses at the shelter described Matthew as angry and making verbal threats against defendant. Matthew testified he wanted to speak with defendant to confront him and "get some closure," but did not make any threats. It is undisputed, however, Matthew was asked to leave and did not speak with defendant at that time.

On March 8, 2016, Matthew arrived unannounced at Nicole's residence with two of the children. When she partially opened the door, Matthew saw defendant in the house. Matthew became angry because the third child also was in the house, and he and Nicole had agreed significant others would not be around the children. Matthew testified he was able to enter the house because Nicole let him in when defendant stated, "Let the motherfucker in. Let that motherfucker in. Let him in, Nicole." Nicole and the children, on the other hand, testified Matthew forced his way into the house, despite her repeated requests that he not enter. It is undisputed that, while in the doorway, Matthew pulled out and threw a box cutter at defendant, although Matthew and Nicole dispute whether the blade was open. Matthew then admitted to entering the house and picking up an umbrella, but asserted he immediately dropped it. Nicole testified Matthew picked up both a bat and an umbrella, and threatened defendant with them. Matthew was angry and yelling during this time.

Matthew then approached defendant. The evidence is undisputed that, by this time, Matthew's hands were empty. As he approached, Matthew stated to defendant, "It's fine. You can have her," "I just want a hug," and "I don't want to fight you." Matthew had slightly calmed down at this point. Matthew testified he intended to hug defendant, but defendant pushed and stabbed him with a knife. In response, Matthew began punching defendant, and defendant began "slicing" Matthew with at least one knife. Matthew testified he "staggered" defendant with one of his punches while being stabbed

1     by defendant. Nicole's testimony disputed Matthew's account of the
fight. While she agreed Matthew approached defendant asking for a
2     hug, she testified Matthew triggered the fight by punching defendant.

3     Nicole had been between Matthew and defendant just prior to the
fight, but was pushed into the kitchen when the fight began. After
4     catching her balance, she returned to where the men were fighting,
pulled Matthew away from defendant, and told him to leave. At that
5     point, Matthew noticed the blood and lacerations, gathered his
things, and left the house. Nicole told her son to give Matthew a
6     towel. He did so, and Matthew left with the towel pressed to his neck.
Matthew and Nicole's daughter, who entered the house around the
7     time the fight ended, testified defendant stated, "Nigga, I'm going to
come find you and kill you" while Matthew was leaving. She
8     testified she saw defendant with a bloody knife, and Nicole's son and
Matthew both testified they saw defendant with two knives.
9
    The hospital activated the full trauma team in response to Matthew's
10     injuries, a step usually taken only in instances of life-threatening
emergencies. The on-call trauma surgeon, John Zopfi, testified
11     Matthew required 40 minutes of resuscitation, intubation, and was
placed on a ventilator. Matthew had emergency surgery due to
12     certain injuries, including a 14-centimeter laceration on his neck that
transected the external jugular vein, a 12-centimeter laceration along
13     his jaw, and a 16-centimeter laceration on his forehead that went
down to the skull and transected his temporal artery. Prior to surgery,
14     Matthew lost approximately 30 to 35 percent of his total blood
volume. Dr. Zopfi opined Matthew would not have survived without
15     the surgery, and would have died in approximately 30 or 40 minutes
had the hemorrhages not been controlled.
16
    The jury convicted defendant of assault with a deadly weapon, and
17     found true the enhancements for personal infliction of great bodily
injury and personal use of a deadly weapon. He was sentenced to 14
18     years in state prison. Defendant timely appealed.

19   (People v. Lew, slip op. at 1-4; ECF No. 10-8 at 225-28.)

20   IV.  Standards for a Writ of Habeas Corpus

21        An application for a writ of habeas corpus by a person in custody under a judgment of a

22   state court can be granted only for violations of the Constitution or laws or treaties of the United

23   States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation

24   or application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire,

25   502 U.S. 62, 67-68 (1991).

26        Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

27   corpus relief:

28   ////

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established Federal law" consists of holdings of the Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38, 44-45 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct." Id. Further, where courts of appeals have diverged in their treatment of an issue, there is no "clearly established federal law" governing that issue. See Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme

5

1  Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case."[2]

2  Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413; see also Chia v.

3  Cambra, 360 F.3d 997, 1002 (9th Cir. 2004).  In this regard, "a federal habeas court may not issue

4  the writ simply because that court concludes in its independent judgment that the relevant state-

5  court decision applied clearly established federal law erroneously or incorrectly.  Rather, that

6  application must also be unreasonable."  Williams, 529 U.S. at 411; see also Schriro v. Landrigan,

7  550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 ("It is not enough that a federal habeas court,

8  in its 'independent review of the legal question,' is left with a '"firm conviction"' that the state

9  court was '"erroneous"'").  "A state court's determination that a claim lacks merit precludes

10 federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state

11 court's decision."  Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v.

12 Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus

13 from a federal court, a state prisoner must show that the state court's ruling on the claim being

14 presented in federal court was so lacking in justification that there was an error well understood

15 and comprehended in existing law beyond any possibility for fair-minded disagreement."  Id. at

16 103.

17        If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

18 court must conduct a de novo review of a habeas petitioner's claims.  Delgadillo v. Woodford,

19 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008)

20 (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of

21 § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

22 considering de novo the constitutional issues raised.").

23        The court looks to the last reasoned state court decision as the basis for the state court

24 judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

25 If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

26 ───────────────

27 [2]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be
   overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
   presented in the state court proceeding."  Stanley, 633 F.3d at 859 (quoting Davis v. Woodford,

28 384 F.3d 628, 638 (9th Cir. 2004)).

previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  Richter, 562 U.S. at 99.  This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely."  Id. at 99-100.  Similarly, when a state court decision on petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits.  Johnson v. Williams, 568 U.S. 289, 298-301 (2013) (citing Richter, 562 U.S. at 98).  If a state court fails to adjudicate a component of the petitioner's federal claim, the component is reviewed de novo in federal court.  See, e.g., Wiggins v. Smith, 539 U.S. 510, 534 (2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable."  Himes, 336 F.3d at 853.  Where no reasoned decision is available, the habeas petitioner has the burden of "showing there was no reasonable basis for the state court to deny relief."  Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims.  Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012).  While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court reviews the state court record to "determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  Richter, 562 U.S. at 101.  It remains the petitioner's burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'"  Walker v. Martel, 709 F.3d 925, 939

1   (9th Cir. 2013) (quoting <u>Richter</u>, 562 U.S. at 98).

2          When it is clear, however, that a state court has not reached the merits of a petitioner's

3   claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

4   habeas court must review the claim de novo.  <u>Stanley</u>, 633 F.3d at 860 (citing <u>Reynoso v.</u>

5   <u>Giurbino</u>, 462 F.3d 1099, 1109 (9th Cir. 2006)).

6   V.  <u>Petitioner's Claims</u>

7          A.  Insufficient Evidence

8          Petitioner claims that there was insufficient evidence to convict because the evidence

9   showed that he only used the force necessary to stop the attack, thus raising a possible self-

10  defense claim.  (ECF No. 1 at 5.)  He claims that the "prosecution failed to prove beyond a

11  reasonable doubt that less force would have stopped the attack."  (ECF No. 10-8 at 36; <u>see also</u>

12  ECF No. 1 at 5.)

13         In the last reasoned state court opinion, the California Court of Appeal considered this

14  claim and rejected it.

15             *A. Sufficiency of Evidence for Assault Conviction*

16         Defendant argues insufficient evidence supports his conviction for
    assault "[b]ecause the prosecution's evidence showed that only the
17  actions [defendant] took were sufficient to stave off [Matthew's]
    attack," and thus raised reasonable doubt on the issue of self-defense.
18

19             1. Standard of Review

20         Our review of any claim of insufficiency of the evidence is limited.
    " ' "When the sufficiency of the evidence is challenged on appeal,
21  the court must review the whole record in the light most favorable to
    the judgment to determine whether it contains substantial evidence—
22  i.e., evidence that is credible and of solid value—from which a
    rational trier of fact could have found the defendant guilty beyond a
23  reasonable doubt." ' " (*People v. Hill* (1998) 17 Cal.4th 800, 848–
    849.) The same standard of review applies when a conviction rests
24  primarily on circumstantial evidence. (*People v. Perez* (1992) 2
    Cal.4th 1117, 1124.) We must presume in support of the judgment
25  the existence of every fact the trier of fact could have reasonably
    deduced from the evidence. (*People v. Kraft* (2000) 23 Cal.4th 978,
26  1053.) An appellate court does not reweigh the evidence, reassess
    witness credibility or resolve factual questions. (*People v. Ochoa*
27  (1993) 6 Cal.4th 1199, 1206.) " 'If the circumstances reasonably
    justify the trier of fact's findings, the opinion of the reviewing court
28  that the circumstances might also reasonably be reconciled with a
    contrary finding does not warrant a reversal of the judgment.' "

                                      8

(*People v. Thomas* (1992) 2 Cal.4th 489, 514.) Given this court's limited role on appeal, defendant bears a significant burden in claiming there was insufficient evidence to sustain his convictions.

2. Analysis

" 'To justify an act of self-defense ..., the defendant must have an honest and reasonable belief that bodily injury is about to be inflicted on him. [Citation.]' [Citation.] The threat of bodily injury must be imminent [citation], and '... any right of self-defense is limited to the use of such force as is reasonable under the circumstances.' " (*People v. Minifie* (1996) 13 Cal.4th 1055, 1064–1065.) A person also has the right to resist a battery (i.e., an offensive touching) by using force that is reasonable under the circumstances, even if no injury is being inflicted. (*People v. Myers* (1998) 61 Cal.App.4th 328, 335 (*Meyers* ).) However, " 'deadly force or force likely to cause great bodily injury may be used only to repel an attack which is in itself deadly or likely to cause great bodily injury.' " (*People v. Hardin* (2000) 85 Cal.App.4th 625, 629–630.)

Whether a defendant acted in self-defense may turn on various factual issues, which are normally resolved by the jury. For example, these may include whether the circumstances would cause a reasonable person to perceive the necessity of self-defense, whether the defendant actually acted in defense of himself, and whether the force he used was excessive. (*See People v. Clark* (1982) 130 Cal.App.3d 371, 378, disapproved on other grounds in *People v. Blakeley* (2000) 23 Cal.4th 82, 92.) As noted above, the substantial evidence rule prohibits us from reassessing the credibility of the witnesses or resolving factual disputes.

Here, the evidence supporting defendant's self-defense claim was far from uncontroverted, and reasonable persons could differ on whether the amount of force he used was excessive under the circumstances. It is undisputed Matthew entered the house and approached defendant. Although conflicting evidence was offered regarding how the fight began, it is undisputed Matthew was not wielding any weapons while defendant possessed one or two knives.

Once the fight began, defendant engaged in conduct—stabbing with a box cutter and/or knife—likely to cause great bodily injury. The only justification for such conduct is if defendant reasonably believed he was at risk of great bodily injury. (*People v. Hardin, supra*, 85 Cal.App.4th at pp. 629–630.) The record does not establish defendant either faced such a risk or could reasonably believe he faced such a risk. Nothing in the record suggests Matthew's fists, alone, would cause such harm. Nor does the record suggest defendant believed Matthew's fists could cause such harm. Even Nicole, who observed the entire fight and was between Matthew and defendant for a portion of it, did not testify as to any injuries sustained by defendant. The primary "threat" to defendant that Nicole identified in her testimony was Matthew allegedly knocking defendant against a sliding door and punching defendant from above. However, on cross-examination, Nicole contradicted this testimony and conceded defendant did not fall against the sliding door and instead Matthew

9

and defendant were punching each other. The photographs of defendant after the fight also do not disclose any obvious injuries. While it is possible defendant was bruised under his clothing, he clearly did not experience any meaningful injury to his head or face and was not bleeding apart from a minor cut on one finger.

Moreover, there is no evidence to suggest defendant attempted to first use lesser force without success. For example, there is no evidence defendant began the fight with only his fists, or threatened Matthew with the knife prior to actually using it. Rather, the record shows the fight likely lasted for less than 40 seconds and Matthew was in Nicole's residence for no more than five minutes. The extent of Matthew's injuries—within a 40-second timeframe—suggests defendant immediately utilized the knife in a manner to cause great bodily injury without attempting to first defend himself with a lesser degree of force.

Under these circumstances, the jury could have reasonably determined the prosecutor presented sufficient evidence to negate defendant's self-defense claim. The evidence, viewed most favorably to the prosecution, establishes defendant used unreasonable force in his fight with Matthew, defeating his claim of lawful self-defense. Although Matthew threw a box cutter at defendant and initially picked up an umbrella and possibly a bat, Matthew was not holding any weapons when he approached defendant. While Matthew was able to strike defendant at least twice, it is unclear whether those punches caused any actual harm to defendant in light of the lack of any visible injuries on him. Matthew, however, suffered multiple lacerations to his face, neck, arm, and torso, including a forehead laceration that went all the way to the skull and transected the temporal artery and a neck laceration that transected the external jugular vein. Matthew's injuries would have been fatal had he not received emergency surgery, and he has ongoing physical trauma.

Drawing all logical inferences in favor of the verdict, substantial evidence supports the jury's finding that defendant used excessive force in defending himself against Matthew. (*People v. Harris* (1971) 20 Cal.App.3d 534, 537 [" 'the question of whether there was [excessive force] is ordinarily one of fact for the jury to determine' "].) That the record also includes some evidence from which a rational jury could have found otherwise does not establish defendant acted in self-defense as a matter of law. Accordingly, we find the evidence adduced at trial was sufficient to support his conviction.[3]

[N.3 Because we find substantial evidence supports a finding that defendant used excessive force, we need not address whether there was substantial evidence of mutual combat or of defendant initiating the fight.]

(People v. Lew, slip op. at 4-7; ECF No. 10-8 at 228-31.)

A petitioner is entitled to habeas corpus relief on a sufficiency of the evidence claim "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have

10

1  found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979);

2  see also Ngo v. Giurbino, 651 F.3d 1112, 1115 (9th Cir. 2011).  This inquiry involves two steps.

3  First, this court must review the evidence in the light most favorable to the prosecution.  Jackson,

4  443 U.S. at 319.  If there are conflicting factual inferences, the federal habeas court must presume

5  the jury resolved the conflicts in favor of the prosecution.  Id. at 326 ("[A] federal habeas corpus

6  court faced with a record of historical facts that supports conflicting inferences must presume—

7  even if it does not affirmatively appear in the record—that the trier of fact resolved any such

8  conflicts in favor of the prosecution, and must defer to that resolution."); McDaniel v. Brown, 558

9  U.S. 120, 133 (2010) (per curiam).  Second, this court will "determine whether the evidence at

10  trial, including any evidence of innocence, could allow *any* rational trier of fact to find the

11  essential elements of the crime beyond a reasonable doubt." United States v. Nevils, 598 F.3d

12  1158, 1165 (9th Cir. 2010) (en banc).

13      Although this court's review is grounded in due process under the Fourteenth

14  Amendment, the Jackson standard "must be applied with explicit reference to the substantive

15  elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324 n.16; Juan H.

16  v. Allen, 408 F.3d 1262, 1275-76 (9th Cir. 2005).  This court will look to state law to establish

17  the elements of the offense and then turn to the federal question of whether the state court was

18  objectively unreasonable in concluding that sufficient evidence supported that conviction.  See

19  Johnson v. Montgomery, 899 F.3d 1052, 1056 (9th Cir. 2018).

20      "After AEDPA, we apply the standards of *Jackson* with an additional layer of deference."

21  Juan H., 408 F.3d at 1274; see Coleman v. Johnson, 566 U.S. 650, 651 (2012) (per curiam).  On

22  direct appeal at the state level, "it is the responsibility of the jury—not the court—to decide what

23  conclusions should be drawn from evidence admitted at trial.  A reviewing court may set aside the

24  jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have

25  agreed with the jury." Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam).  On habeas review,

26  "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence

27  challenge simply because the federal court disagrees with the state court.  The federal court

28  instead may do so only if the state court decision was 'objectively unreasonable.'" Id. (quoting

11

1    <u>Renico v. Lett</u>, 559 U.S. 766, 773 (2010)).

2           Under California law, the prosecution must prove the following elements to obtain a

3    conviction for assault with a deadly weapon:

4           1.  The defendant did an act with a deadly weapon other than a
                firearm that by its nature would directly and probably result in
5               the application of force to a person;

6           2.  The defendant did that act willfully;

7           3.  When the defendant acted, he was aware of facts that would lead
                a reasonable person to realize that his act by its nature would
8               directly and probably result in the application of force to
                someone;
9

10          4.  When the defendant acted, he had the present ability to apply
                force with a deadly weapon other than a firearm to a person;

11              AND

12          5.  The defendant did not act in self-defense or in defense of
                someone else.
13

14   (ECF No. 10-3 at 128; <u>see also</u> CAL. PENAL CODE 245(a)(1); <u>People v. Golde</u>, 163 Cal. 4th 101,

15   108-09 (2008).)  Self-defense is a defense to this charge; "[t]he defendant acted in lawful self-

16   defense if:

17          1.  The defendant reasonably believed that he or someone else was
                in imminent danger of suffering bodily injury or was in imminent
18              danger of being touched lawfully;

19          2.  The defendant reasonably believed that the immediate use of
                force was necessary to defend against that danger;
20
                AND
21

22          3.  The defendant used no more force than was reasonably necessary
                to defend against that danger.

23   (ECF No. 10-3 at 133; <u>see also</u> <u>People v. Minifie</u>, 13 Cal. 4th 1055, 1065-66 (1996).)  The trial

24   court instructed the jury that "[t]he People have the burden of proving beyond a reasonable doubt

25   that the defendant did not act in lawful self-defense or defense of another."  (ECF No. 10-3 at

26   134.)  Petitioner admits that the jury was properly instructed.  (ECF No. 11 at 23-24.)  He only

27   contests whether the third factor of self-defense—that defendant used no more force than was

28   reasonably necessary to defend against that danger—has been met.  (<u>Id.</u> at 24, 26.)

Here, the state appellate court reasonably concluded that "[t]he evidence, viewed most favorably to the prosecution, establishes defendant used unreasonable force in his fight with Matthew, defeating his claim of lawful self-defense." (ECF No. 10-8 at 230; id. at 229 ("Here, the evidence supporting defendant's self-defense claim was far from unconverted, and reasonable persons could differ on whether the amount of force he used was excessive under the circumstances.").) The fight was short, lasting about 40 seconds. (ECF No. 10-8 at 230.) Matthew was not holding any weapons when he approached petitioner. (ECF No. 10-8 at 231; ECF No. 10-5 at 114-17.) Although Matthew punched petitioner, it is unclear whether petitioner suffered any injuries, as none were visible upon arrest. (ECF No. 10-8 at 231; ECF No. 10-5 at 272-75.) After being punched, petitioner started "slicing" Matthew with a knife, causing multiple lacerations to Matthew's face, neck, arm, and torso. (ECF No. 10-8 at 231; ECF No. 10-6 at 35-39; ECF No. 10-5 at 120-21.) Matthew would have died from these injuries without emergency surgery, and he continues to suffer physical trauma. (ECF No. 10-8 at 231; ECF No. 10-6 at 42; ECF No. 10-5 at 132.) Based on the trial evidence, the state appellate court's determination that petitioner used an unreasonable amount of force thereby defeating his self-defense claim was not objectively unreasonable.

To the extent that petitioner challenges the credibility of the trial evidence, this argument fails. (ECF No. 11 at 25-26 & n.19.) A jury's credibility determination is entitled to near-total deference. Jackson, 443 U.S. at 326. If confronted by a record that supports conflicting inferences, a federal habeas court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. Petitioner cannot meet this standard. As discussed above, the state appellate court's conclusion that the conviction was supported by sufficient evidence was not objectively unreasonable.

Petitioner claims that the state appellate court "disposed of the claim by applying self-defense elements applicable only in a homicide case." (ECF No. 11 at 27.) Relatedly, petitioner contends that the state appellate court "was not free to apply [People v. Hardin, 85 Cal. App. 4th 625 (2000)] dictum over the law as stated in [People v. Ceballos, 12 Cal. 3d 470 (1974)]." (Id. at

27-28.)  While this claim involves an interpretation of state law, the state appellate court did not

incorrectly apply state law.  Rather, the state appellate court accurately restated that, under

California law, self-defense is rooted in the doctrine of necessity, giving rise to two related rules.

People v. Clark, 130 Cal. App. 3d 371, 380 (1982); see also Hardin, 85 Cal. App. 4th at 629-30.

"First, only that force which is necessary to repel an attack may be used in self-defense; force

which exceeds the necessity is not justified."  Clark, 130 Cal. App. 3d at 380.  "Second, deadly

force or force likely to cause great bodily injury may be used only to repel an attack which is in

itself deadly or likely to cause great bodily injury; thus '[a] misdemeanor assault must be suffered

without the privilege of retaliating with deadly force.'"  Id.  "An assault with fists does not justify

the use of a deadly weapon in self-defense."  People v. Flores, No. B287454, 2018 WL 6695916,

at *2 (Cal. Ct. App. Dec. 20, 2018).  Here, the state appellate court found that petitioner used

force likely to cause great bodily injury to counter a fist fight and that doing so was unreasonable,

negating his self-defense claim.  (ECF No. 10-8 at 230.)  The state court's decision was not

contrary to, or an unreasonable application of, clearly established federal law, or that such a

finding was based on an unreasonable application of the facts.  This court recommends denying

habeas relief on this claim.

B.  Right to Trial by Jury

Petitioner claims that he was denied his right to fair jury because the Court of Appeal

"upheld" a verdict not rendered by the jury.  Specifically, he argues the following:

> The jury was correctly instructed, per CA law, that I could defend
> with the amount of force necessary to repel any battery.  The Court
> of Appeal didn't consider whether the prosecution proved I used
> more. It found sufficient evidence to convict because a jury could
> have found I faced no risk of great bodily injury but used force which
> risked such injury to the attacker. The rule it applied is for homicide
> cases, which is why the jury wasn't instructed to consider the issue
> and did not. My conviction was upheld on a theory never tried to a
> jury.

(ECF No. 1 at 5.)

Petitioner raised this argument in his petition for rehearing before the California Court of

Appeal.  (ECF No. 10-8 at Ex. 7.)  In his rehearing brief, he argues that the state appellate court

should not have cited to People v. Hardin, 85 Cal. App. 4th 625 (2000), because the elements of

14

1    self-defense in a homicide case are different than a self-defense claim in a non-homicide case.

2    (Id. at Ex. 7 at 300-02.)  The state appellate court denied the petition for rehearing.  (Id. at Ex. 8.)

3    Petitioner again raised this claim before the California Supreme Court.  (Id. at Ex. 9.)  The

4    California Supreme Court summarily denied review.  (Id. at Ex. 10.)  Because this claim was

5    sufficiently exhausted, this court proceeds to the merits of the claim.

6         This claim fails on the merits for several reasons.  First, to the extent petitioner contends

7    that the court of appeals imposed a new verdict not reached by the jury, he is mistaken.  The jury

8    convicted petitioner of assault with a deadly weapon intending to inflict great bodily injury.

9    (ECF No. 10-3 at 143-44, 146.)  The court of appeals affirmed that judgment.  (ECF No. 10-8 at

10   225, 245.)  Nor did the court of appeals "engag[e] in fact-finding which the jury was never

11   required to make," as petitioner alleges.  (ECF No. 11 at 31.)  As discussed above, the state

12   appellate court did not incorrectly apply state law and focused on the relevant issue—whether

13   petitioner's use of force was reasonable under the circumstances.  (ECF No. 10-8 at 229-30; ECF

14   No. 11 at 24.)  It held that petitioner's use of force was unreasonable.  (ECF No. 10-8 at 229)

15   ("Here, the evidence supporting defendant's self-defense claim was far from uncontroverted, and

16   reasonable persons could differ on whether the amount of force he used was excessive under the

17   circumstances."); id. at 230 ("The evidence, viewed most favorably to the prosecution, establishes

18   defendant used unreasonable force in his fight with Matthew, defeating his claim of lawful self-

19   defense.").

20        Second, state law determines the elements of a self-defense claim, and this court must

21   defer to the state court's interpretation of state law applicable in this case.  See Johnson, 566 U.S.

22   at 655; Hicks v. Feiock, 485 U.S. 624, 629-30 (1988).  This court notes that the state appellate

23   court's inquired whether petitioner reasonably believed he was in danger of suffering "great

24   bodily injury" as compared to the jury instruction which inquired whether petitioner was at risk of

25   "bodily injury."  (Compare ECF No. 10-8 at 230 to ECF No. 10-3 at 133.)  Petitioner claims that

26   "this cannot mean that federal courts must pretend that the law in California is whatever a panel

27   of the Court of Appeal says it is on a given day, despite clear contrary state high court authority."

28   (ECF No. 11 at 30.)  It does not; however, federal habeas relief is not available for such alleged

1    errors.  See Feiock, 485 U.S. at 629-30 ("Although petitioner marshals a number of sources in

2    support of the contention that the state appellate court misapplied state law on these two points,

3    the California Supreme Court denied review of this case, and we are not free in this situation to

4    overturn the state court's conclusion of state law.")  Lastly, petitioner does not cite any clearly

5    established federal law from the Supreme Court prohibiting a state from applying the same self-

6    defense claim in homicide and non-homicide cases.  The state court's decision, therefore, was not

7    contrary to, or an unreasonable application of, clearly established Supreme Court authority.  This

8    court recommends denying habeas relief on this claim as well.

9         C. Due Process and Ineffective Assistance of Counsel Related to Jury Instruction

10        Petitioner claims a violation of due process and the right to effective assistance of counsel.

11   Specifically, he asserts the following:

12           Violations of due process and the right to the effective assistance of
             counsel by giving notice, through the official pattern jury
13           instructions, that I would be tried under one standard, and then have
             the conviction reviewed under one more favorable to the prosecution,
14           depriving me of an opportunity to defend under that standard at trial.

15   (ECF No. 1 at 7.)

16        Petitioner raised this argument in his petition for rehearing before the California Court of

17   Appeal.  (ECF No. 10-8 at Ex. 7.)  The state appellate court denied the petition for rehearing.  (Id.

18   at Ex. 8.)  Petitioner again raised this claim before the California Supreme Court.  (Id. at Ex. 9 at

19   302.)  The California Supreme Court summarily denied review.  (Id. at Ex. 10.)  Because this

20   claim was sufficiently exhausted, this court proceeds to the merits of the claim.  Petitioner's claim

21   three seems at least in part to repeat the arguments raised in claims one and two with regards to

22   the jury instructional error claim.  This court will not rehash those arguments again here.

23        Petitioner's ineffective assistance of counsel claim faces a high hurdle.  To state an

24   ineffective assistance of counsel claim, a defendant must show that (1) his counsel's performance

25   was deficient, falling below an objective standard of reasonableness, and (2) his counsel's

26   deficient performance prejudiced the defense.  Strickland v. Washington, 466 U.S. 668, 687-88

27   (1984).  For the deficiency prong, "a court must indulge a strong presumption that counsel's

28   conduct falls within the wide range of reasonable professional assistance; that is, the defendant

16

1   must overcome the presumption that, under the circumstances, the challenged action 'might be

2   considered sound trial strategy.'" Id. at 689.  For the prejudice prong, the defendant "must show

3   that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

4   proceeding would have been different.  A reasonable probability is a probability sufficient to

5   undermine confidence in the outcome." Id. at 694.  "The standards created by *Strickland* and

6   § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly'

7   so." Richter, 562 U.S. at 105 (internal citations omitted); see also Landrigan, 550 U.S. at 473.

8   When § 2254(d) applies, the "question is whether there is any reasonable argument that counsel

9   satisfied *Strickland's* deferential standard." Richter, 562 U.S. at 105.

10      Petitioner does not surpass this high bar.  Although the state appellate court and California

11   Supreme Court summarily denied his petitions, there are several reasonable arguments that trial

12   counsel satisfied the Strickland standard.  First, trial counsel did not act deficiently.  Petitioner

13   repeatedly acknowledged that the jury was correctly instructed and that his counsel defended him

14   based on those instructions.  (ECF No. 10-8 at Ex. 9 at 300; ECF No. 11 at 24.)  It seems obvious

15   that trial counsel cannot be deficient for following correct jury instructions.  Furthermore,

16   petitioner's ineffective assistance of counsel claim presumes that the state appellate court applied

17   the incorrect self-defense elements.  But that is unclear.  Petitioner admits that state courts are

18   inconsistent in how they review self-defense claims.  (ECF No. 10-8 at Ex. 9 at 300 ("This court

19   should resolve the inconsistency between how juries are instructed and the test some reviewing

20   courts apply regarding whether, in a non-homicide case, only a threat of great bodily injury or

21   death can justify the use of potentially deadly force in self-defense."); id. at 301 ("Where

22   potentially deadly force was used by the defendant, there appears to be inconsistency among the

23   Courts of Appeal in the standard they apply to reviewing the sufficiency of the evidence.

24   (Petitioner has not sought opinions applying the correct standard, but assumes that they likely

25   exist in significant numbers.).")  Lastly, petitioner fails to present any meritorious argument that

26   his counsel's performance prejudiced his case.  He offers no evidence other than his unsworn

27   statement that "the attorney's recommendations concerning possible plea bargains would likely

28   [be] different."  (ECF No. 11 at 32.)  Mere conclusory allegations, like petitioner's here, "which

17

1    are not supported by a statement of specific facts do not warrant habeas relief."  James v. Borg,

2    24 F.3d 20, 26 (9th Cir. 1994).  This court concludes that the state court's decision was not

3    contrary to, or an unreasonable application of, clearly established Supreme Court authority and

4    recommends denying habeas relief on claim three.

5          D.  Ineffective Assistance of Counsel in Closing Argument

6          Petitioner claims that his counsel "failed to focus the jury's attention on the critical

7    evidence exculpating me and substituted a patently invalid legal theory," depriving him of

8    effective assistance of counsel.  (ECF No. 1 at 7.)

9          In the last reasoned state court opinion, the California Court of Appeal considered this

10   claim and rejected it.

11              *B. Ineffective Assistance of Counsel in Closing Argument*

12              On appeal and in a related habeas corpus petition, defendant argues
              ineffective assistance of counsel due to his counsel's failure to
13              emphasize Matthew's alleged concession that "it took every blow
              [defendant] struck to get [Matthew] to back off."
14

15              "Establishing a claim of ineffective assistance of counsel requires the
              defendant to demonstrate (1) counsel's performance was deficient in
16              that it fell below an objective standard of reasonableness under
              prevailing professional norms, and (2) counsel's deficient
17              representation prejudiced the defendant, i.e., there is a 'reasonable
              probability' that, but for counsel's failings, defendant would have
18              obtained a more favorable result." (*People v. Dennis* (1998) 17
              Cal.4th 468, 540.) "The right to effective assistance extends to
19              closing arguments. [Citations.] Nonetheless, counsel has wide
              latitude in deciding how best to represent a client, and deference to
20              counsel's tactical decisions in his closing presentation is particularly
              important because of the broad range of legitimate defense strategy
21              at that stage. Closing arguments should 'sharpen and clarify the
              issues for resolution by the trier of fact,' [citation], but which issues
22              to sharpen and how best to clarify them are questions with many
              reasonable answers. Indeed, it might sometimes make sense to forgo
23              closing argument altogether. [Citation.] Judicial review of a defense
              attorney's summation is therefore highly deferential...." (*Yarborough
24              v. Gentry* (2003) 540 U.S. 1, 5–6.) "Reversals for ineffective
              assistance of counsel during closing argument rarely occur; when
25              they do, it is due to an argument against the client which concedes
              guilt, withdraws a crucial defense, or relies on an illegal defense."
26              (*People v. Moore* (1988) 201 Cal.App.3d 51, 57.) "The mere
              circumstance that a different, or better, argument could have been
27              made is not a sufficient basis for finding deficient performance by
              defense counsel." (*People v. Ledesma* (2006) 39 Cal.4th 641, 748.)

28              In this case, counsel may well have believed raising the argument

18

defendant now asserts on appeal would not have been the best trial strategy. First, counsel's decision to focus on the increasing threat posed by Matthew to justify defendant's response was a reasonable approach. Defendant acknowledges as much. He repeatedly notes his counsel's representation was "excellent" and "admirable" apart from this one allegedly missing argument. As to the omitted argument, and contrary to defendant's assertions, Matthew never testified he stopped only when defendant struck the final blow. Rather, Matthew testified that "everything stopped" upon seeing blood everywhere, and he left after realizing the extent of his injuries. Had trial counsel pursued this alternative argument now proposed by defendant, he would have been forced to address conflicting evidence regarding how and why the fight stopped. For example, Nicole testified the fight ended when she pulled Matthew away from defendant. Counsel then would have needed to argue why Nicole would have been unable to do the same had Matthew suffered lesser injuries. And counsel would have needed to address and counter the prosecution's evidence that Matthew may have been more likely to continue fighting due to the severity of his injuries. Contrary to defendant's position, this is neither a clean nor simple argument.

Second, trial counsel spent a considerable portion of time impeaching Matthew during his testimony. After painting Matthew as a liar, it was reasonable for counsel to avoid asking the jury to then rely on Matthew's testimony.

Finally, we note counsel did, in fact, argue the point defendant now raises. And defendant concedes his trial counsel "did touch on this." Trial counsel argued as part of his summation: "When this incident is going on, and when the fight is taken into the kitchen and [Matthew] is punching [defendant] and [defendant] is defending himself against these attacks, and the attacks wind up on the back sliding glass door, [Matthew] tells the police officers that even as he's getting cut, even as [defendant] is defending himself against these attacks, he caught him with a punch and he rocked him. [¶] [Defendant] was backing up the entire time. The fight goes on. He's defending himself; and even as [defendant] is defending himself, [Matthew] continues to go forward. He hits him with a punch so hard that it rocked him. [¶] ... [¶] ... So is the danger over? Is the danger over when an individual that has done all this, knife, bat, umbrella[,] sucker punch, and the fight is taken to the kitchen, [defendant] uses the knife to defend himself, and this individual is still coming forward at you, and he's still coming forward at you throwing punches, punches hard enough to rock him, causing him to slide back to the sliding glass door."

Defendant's position that the summation should have further emphasized this point or been structured differently, does not support a finding that counsel's performance was deficient. As the United States Supreme Court noted in Yarborough: "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect. [Citation.] That presumption has particular force where a petitioner bases his ineffective-assistance claim solely on the trial record, creating a situation in which a court 'may have no way

19

of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive.' [Citation.] Moreover, even if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." (*Yarborough v. Gentry, supra*, 540 U.S. at p. 8.)

Defendant also contends trial counsel raised a "patently invalid legal theory" when he first commented if someone uses deadly force against you by shooting a gun, you can use deadly force to defend yourself, and then analogized that to if someone throws a knife, you can pick up the knife and defend yourself with it. Defendant asserts this argument reduced counsel's credibility because he was relying on a misstatement of the law. Defendant cites no authority to support his proposition. (*People v. Stanley* (1995) 10 Cal.4th 764, 793 [when a defendant fails to support an argument with citations to authority, we may treat it as waived].) Even considering the merits, counsel's closing, as a whole, was within the correct legal framework. As part of his summation, trial counsel read the jury the instruction on self-defense and proceeded to discuss each element. When he reached the third element—whether defendant used no more force than was necessary—he described how Matthew barged into the house, pulled and opened a knife, and threw it at defendant. Trial counsel argued an individual has the right to defend himself with a deadly weapon if that deadly weapon was used against him, and analogized that proposition to the current situation where "[a]n individual throws a knife at [defendant]. He picks up the knife, and he defends himself with the same knife." Counsel then presented the following argument: "And I submit to you, [defendant] acted reasonably by picking up that knife, because [Matthew] did not deescalate. He grabbed a bat. He grabbed an umbrella, and he sucker punched him, furthe[r] escalating the incident. [¶] It goes along the line of what I just said.... [Y]ou don't have to wait for you to be injured by this weapon, because if you wait, you might be dead." In the context of counsel's larger argument, we do not believe defendant has established this analogy reduced counsel's credibility or otherwise undermined his summation.

Accordingly, we reject defendant's ineffective assistance claim based on his counsel's summation because he fails to overcome the presumption that counsel's argument reflected a reasonable tactical choice. (*See People v. Freeman* (1994) 8 Cal.4th 450, 498 [decision as to how to argue to the jury is inherently tactical].)

(People v. Lew, slip op. at 7-11.)

   1.  Exculpatory Evidence

   Petitioner argues that his counsel should have stressed in his closing argument that "the prosecution's evidence showed it took every blow petitioner struck to get [Matthew] to back off, that petitioner left him alone when he did, and that therefore the force he used was reasonably necessary to defend against the danger posed by [Matthew's] attacks." (ECF No. 11 at 33.)

20

As stated above, to state an ineffective assistance of counsel claim, a defendant must show that (1) his counsel's performance was deficient, falling below an objective standard of reasonableness, and (2) his counsel's deficient performance prejudiced the defense.  Strickland, 466 U.S. at 687-88.  "The right to effective assistance [of counsel] extends to closing arguments."  Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam).  However, counsel is afforded "wide latitude" to determine how to represent his client and "deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage."  Id. at 5-6; see also Smith v. Spisak, 558 U.S. 139, 150-54 (2010); Gallegos v. Ryan, 820 F.3d 1013, 1033 (9th Cir. 2016).  There are many reasonable ways to sharpen and clarify issues at summation of trial, and in some cases, "it might sometimes make sense to forgo closing argument altogether."  Gentry, 540 U.S. at 6.

This court finds that the state court's rejection of petitioner's ineffective assistance of counsel claim was not objectively unreasonable.  The state court correctly applied Strickland and assessed whether counsel's performance was deficient.  (ECF No. 10-8 at 231-35); see also Strickland, 466 U.S. at 697 (courts do not need to address both components of the inquiry to dispose of an ineffective assistance of counsel claim).  As the state court noted, in closing argument, defense counsel focused on Matthew's increasing threat to argue that petitioner acted in self-defense.  (ECF No. 10-8 at 232; ECF No. 10-6 at 300 ("He was scared, because [Matthew] came in acting like a mad man."); id. at 301 (arguing that Matthew barged into the house, threw a knife at petitioner, pushed Nicole aside, and grabbed and/or threw an umbrella and bat before punching petitioner); ECF No. 10-7 at 4-7 (stating that Matthew escalated the conflict by waving around a knife and striking Nicole with a bat).)  Defense counsel noted that "ultimately, this case rests on whether or not you all find that there is lawful self-defense."  (ECF No. 10-7 at 9.)  Throughout his closing argument, defense counsel encouraged the jury to use certain facts to determine whether petitioner's conduct was reasonable.  (See, e.g., Id. at 9 ("If you find that Matthew [] threatened [petitioner] in the past, you can use that information in deciding whether or not you believe [petitioner's] conduct was reasonable."); id. at 12 ("[W]hen you find somebody has been threatened by a person in the past, that person is justified in acting more quickly or

1  taking greater self-defense measures against that person.").)  This court agrees with the state court

2  that in light of the record, defense counsel could have reasonably believed that focusing on the

3  victim's escalating threat was sound tactical strategy to establishing self-defense.

4        Petitioner contends that a "reasonably competent counsel would have argued the necessity

5  of petitioner's using the force he employed."  (ECF No. 11 at 35; see also id. at 39.)  The state

6  court correctly acknowledged that defense counsel made this argument.  (ECF No. 10-8 at 233

7  ("Finally, we note counsel did, in fact, argue the point defendant now raises. And defendant

8  concedes his trial counsel 'did touch on this.'").)  Specifically, in closing, defense counsel argued

> So is the danger over? Is the danger over when an individual that has
> done all this, knife, bat, umbrella sucker punch, and the fight is taken
> to the kitchen, [petitioner] uses the knife to defend himself, and this
> individual is still coming forward at you, and he's still coming
> forward at you throwing punches hard enough to rock him, causing
> him to slide back to the sliding glass door.

13  (ECF No. 10-7 at 17.)  In hindsight, petitioner may have wanted his counsel to emphasize this

14  point rather than just touch upon it.  But "judicious selection of arguments for summation is a

15  core exercise of defense counsel's discretion."  Gentry, 540 U.S. at 8.  Furthermore, "[j]udicial

16  review of a defense attorney's summation is therefore highly deferential and doubly deferential

17  when it is conducted through the lens of federal habeas."  Id. at 6.  Petitioner has failed to meet

18  this high burden to succeed on this claim.  "The Sixth Amendment guarantees reasonable

19  competence, not perfect advocacy judged with the benefit of hindsight."  Id. at 8.  This court

20  concludes that the state court's rejection of petitioner's ineffective assistance of counsel argument

21  was not objectively unreasonable. [3]

22  ////

23

---

24  [3] Petitioner also appears to be arguing that the state court unreasonably interpreted the facts when
   it stated "Matthew never testified he stopped only when defendant struck the final blow. Rather,
25  Matthew testified that 'everything stopped' upon seeing blood everywhere, and he left after
   realizing the extent of his injuries."  (ECF No. 11 at 35-36.)  This court reviewed the trial record
26  and finds that the state court accurately characterized Matthew's testimony.  When asked how the
   whole altercation ended, Matthew testified that he "backed up" noticing the blood and cut on his
27  neck, and "started to walk outside." (ECF No. 10-5 at 124; see also id. at 126 (testifying that
   petitioner "just stopped in the kitchen").)
28

1        2.  Invalid Legal Theory

2            Petitioner also contends that his counsel was ineffective because counsel incorrectly

3    argued that petitioner had the right to defend himself "just as one who has been shot at has the

4    right (supposedly) to fire at the assailant even after knowing that the assailant is no longer

5    armed."  (ECF No. 11 at 33.)

6            This argument fails for several reasons.  As the state court noted, petitioner did not cite

7    any authority to support his argument that counsel's argument was a misstatement of state law.

8    (ECF No. 10-8 at 234).  But even assuming that it was a misstatement of state law, it was not

9    objectively unreasonable for the state court to conclude that petitioner was not prejudiced by this

10   error.  Petitioner admitted that the trial court correctly instructed the jury, and defense counsel

11   defended him on those instructions.  (ECF No. 10-8 at Ex. 9 at 300-01; ECF No. 11 at 24; see

12   also ECF No. 10-6 at 259-63.)  Both the prosecutor and defense attorney discussed the jury

13   instructions during closing arguments.  (ECF No. 10-6 at 275-78; ECF No. 10-7 at 9.)  It is

14   axiomatic that a jury is presumed to follow its instructions.  Weeks v. Angelone, 528 U.S. 225,

15   234 (2000).  Petitioner has not provided any reason for this court to reject that presumption here.

16   Lastly, defense counsel referenced his theory three times in closing argument.  (ECF No. 10-6 at

17   300; ECF No. 10-7 at 4, 15.)  These brief references must be viewed in the context of the defense

18   counsel's entire closing argument, which focused on his key theme that petitioner "acted

19   reasonably by picking up that knife, because [Matthew] did not deescalate."  (ECF No. 10-7 at

20   16.)  And that theme is consistent with the jury instruction that petitioner is "only entitled to use

21   that amount of force that a reasonable person would believe is necessary in the same situation."

22   (ECF No. 19-6 at 263.)  Given the trial record, this court concludes that the state court's decision

23   was not contrary to, or an unreasonable application of, clearly established Supreme Court

24   authority and recommends denying habeas relief on this claim.

25       E.  Jury Instruction on Circumstantial Evidence (CALCRIM No. 224)

26           Petitioner argues in claim five that the circumstantial evidence jury instruction was

27   inconsistent with state law and improperly shifted the burden of proof to defendant.  (ECF No. 1

28   at 7-8; ECF No. 11 at 48-56.)  Respondent claims that this argument is procedurally barred and

                                              23

1   fails on the merits.  (ECF No. 10-1 at 20-24.)

2        In the last reasoned state court opinion, the California Court of Appeal considered this

3   claim and rejected it.

4       Defendant contends the trial court erred by failing to instruct the jury
      "it could not convict unless the circumstantial evidence was
5   inconsistent with any rational conclusion other than guilt." The
      People assert defendant forfeited this argument by failing to raise it
6   below. We agree the argument is forfeited.

7   As a general rule, " '[a] party may not argue on appeal that an
      instruction correct in law was too general or incomplete, and thus
8   needed clarification, without first requesting such clarification at
      trial.' " (*People v. Livingston* (2012) 53 Cal.4th 1145, 1165
9   *(Livingston* ).) Defendant does not dispute he failed to object to the
      jury instruction, but contends he was not required to request
10  clarification because the instruction actually given was an incorrect
      statement of law. (*See People v. Franco* (2009) 180 Cal.App.4th 713,
11  719 ["The rule of forfeiture does not apply, however, if the
      instruction was an incorrect statement of the law [citation], or if the
12  instructional error affected the defendant's substantial rights."].)

13  Defendant relies on *People v. Bender* (1945) 27 Cal.2d 164, 175
      (*Bender* ) and CALJIC No. 2.01 in support of his argument. These
14  authorities provide " 'that, to justify a conviction, the facts or
      circumstances must not only be entirely consistent with the theory of
15  guilt but must be *inconsistent with any other rational conclusio*n.' "
      (*Bender*, at p. 175, italics added; CALJIC No. 2.01 ["a finding of
16  guilt as to any crime may not be based on circumstantial evidence
      unless the proved circumstances are not only (1) consistent with the
17  theory that the defendant is guilty of the crime, but (2) cannot be
      reconciled with any other rational conclusion"].) The Supreme Court
18  in *Bender* further noted, " 'Neither the statement in an instruction
      that the guilt of the defendant must be established beyond a
19  reasonable doubt, nor the statement that as between two opposing
      reasonable inferences the one which is consistent with innocence
20  must be preferred to the one tending to show guilt, satisfies the right
      of the defendant to have the jury instructed that where circumstantial
21  evidence is relied upon by the People it must be irreconcilable with
      the theory of innocence in order to furnish a sound basis for
22  conviction.' " (*Bender*, at pp. 175–176.) Defendant maintains the
      trial court's omission of the italicized language from its jury
23  instruction conflicts with authority from our high court. (*See id*. at
      pp. 175, 177.)

24
      Defendant is correct CALCRIM No. 224 does not contain the
25  language stating circumstantial evidence must be "inconsistent with
      any other rational conclusion." But no authority requires use of this
26  precise language. Our Supreme Court "has long held that when the
      prosecution's case rests substantially on circumstantial evidence,
27  trial courts must give 'an instruction *embodying the principle* that to
      justify a conviction on circumstantial evidence the facts and
28  circumstances must not only be entirely consistent with the theory of

1

2

guilt but must be inconsistent with any other rational conclusion.' " (*Livingston, supra,* 53 Cal.4th at p. 1167, italics added.)

3

4

5

6

7

Here, the trial court instructed the jury, "[B]efore you may rely on circumstantial evidence to find the defendant guilty, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant is guilty." Thus, the trial court fulfilled its obligation to instruct the jury that, to justify a conviction on circumstantial evidence, the facts and circumstances must be inconsistent with any other rational conclusion. (*Livingston, supra,* 53 Cal.4th at p. 1167; *Bender, supra,* 27 Cal.2d at pp. 175, 177.)

8

9

10

11

12

13

14

15

16

No reasonable jury would interpret CALCRIM No. 224 in such a way as to allow conviction if it could draw multiple reasonable inferences from the circumstantial evidence, one of which points to innocence. "Words of equal import may be substituted if the principle is substantially but clearly and fairly set forth." (*People v. Navarro* (1946) 74 Cal.App.2d 544, 550.) None of the authority cited by defendant suggests otherwise. (*See, e.g., People v. Koenig* (1946) 29 Cal.2d 87, 93 [error in not giving the requested instruction or "a proper statement of the principle"]; *People v. Kinowaki* (1940) 39 Cal.App.2d 376, 380 [trial court erred in refusing to give requested instruction or "its equivalent"].) The instruction given adequately conveys and embodies the principle articulated in *Bender.* Contrary to defendant's contention, CALCRIM No. 224 does not merely convey circumstantial evidence must be consistent with guilt, but that it must be "the only reasonable conclusion" to be drawn from the circumstantial evidence. (CALCRIM No. 224.) Accordingly, defendant forfeited his claim of error.[5]

17

[N.5 Because we find defendant forfeited his claim of error, we need not address defendant's argument that the error was significant.]

18

(ECF No. 10-8 at 238-40.)

19

20

21

22

23

24

25

26

27

Although procedural issues are often addressed before the merits, they need not be.  A federal court may deny a habeas petition on the merits notwithstanding the petitioner's failure to exhaust remedies.  28 U.S.C. § 2254(b)(2).  As to procedural bar, the Supreme Court in Lambrix v. Singletary, 520 U.S. 518 (1997) skipped over the procedural bar argument and proceeded to the merits.  Id. at 525 ("Despite our puzzlement at the Court of Appeals' failure to resolve this case on the basis of procedural bar, we hesitate to resolve it on that basis ourselves."); see also Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) (stating that courts may "reach the merits of habeas petitions if they are, on their face and without regard to any facts that could be developed below, clearly not meritorious despite an asserted procedural bar.").  "Procedural bar

28

1   issues are not infrequently more complex than the merits issues" and "it may well make sense in

2   some instances to proceed to the merits if the result will be the same." Franklin, 290 F.3d at

3   1232; see, e.g., Dean v. Schriro, 371 F. App'x 751 (9th Cir. Mar. 17, 2010).  Because this claim

4   can be resolved on the merits, this court declines to decide whether a procedural bar precludes

5   petitioner from obtaining habeas relief.

6          On the merits, federal habeas relief is only available if "'the ailing instruction by itself so

7   infected the entire trial that the resulting conviction violates due process.'" Estelle, 502 U.S. at

8   72 (citing Cupp v. Naughten, 414 U.S. 141, 147 (1973)); see also Gilmore v. Taylor, 508 U.S.

9   333, 342 (1993) (In non-capital cases, "we have never said that the possibility of a jury

10   misapplying state law gives rise to federal constitutional error.  To the contrary, we have held that

11   instructions that contain errors of state law may not form the basis for federal habeas relief.").

12   The instruction cannot merely be "undesirable, erroneous, or even 'universally condemned.'"

13   Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).  It must violate a constitutional right.  Id.

14   "[T]he defendant must show both that the instruction was ambiguous and that there was 'a

15   reasonable likelihood' that the jury applied the instruction in a way that relieved the State of its

16   burden of proving every element of the crime beyond a reasonable doubt." Waddington v.

17   Sarausad, 555 U.S. 179, 190-91 (2009).  The jury instruction "'may not be judged in artificial

18   isolation,' but must be considered in the context of instructions as a whole and the trial record."

19   Estelle, 502 U.S. at 72 (quoting Cupp, 414 U.S. at 147).  The Supreme Court has cautioned that

20   there are few infractions that violate fundamental fairness. Id. at 72-73; see, e.g., Sarausad, 555

21   U.S. at 191-92; Middleton v. McNeil, 541 U.S. 433, 437 (2004) (per curiam) ("Nonetheless, not

22   every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due

23   process violation"); Jones v. United States, 527 U.S. 373, 390-92 (1999); Gilmore, 508 U.S. at

24   344.

25          Petitioner argues that the jury instruction was ambiguous because it did not expressly state

26   that, to convict, circumstantial evidence must be inconsistent with any rational conclusion other

27   than guilt.  (ECF No. 11 at 49-50.)  Although the state court noted that the instruction did not

28   contain this exact language, it rejected his claim.  (ECF No. 10-8 at 239-40.)

26

1     The state court's conclusion that the instruction was unambiguous was not objectively

2  unreasonable.  The trial court instructed the jury on CALCRIM No. 224 as follows:

3          Before you may rely on circumstantial evidence to conclude that a
           fact necessary to find the defendant guilty has been proved, you must
4          be convinced that the People have proved each fact essential to that
           conclusion beyond a reasonable doubt.

5
           Also, before you may rely on circumstantial evidence to find the
6          defendant guilty, you must be convinced that the only reasonable
           conclusion supported by the circumstantial evidence is that the
7          defendant is guilty. If you can draw two or more reasonable
           conclusions from the circumstantial evidence, and one of those
8          reasonable conclusions points to innocence and another to guilt, you
           must accept the one that points to innocence. However, when
9          considering circumstantial evidence, you must accept only
           reasonable conclusions and reject any that are unreasonable.

10

11  (ECF No. 10-3 at 110; ECF No. 10-6 at 251-52.)  The state court stated that the California

12  Supreme Court "has long held that when the prosecution's case rests substantially on

13  circumstantial evidence, trial courts must give 'an instruction *embodying the principle* that to

14  justify a conviction on circumstantial evidence the facts and circumstances must not only be

15  entirely consistent with the theory of guilt but must be inconsistent with any other rational

16  conclusion.'"  (ECF No. 10-8 at 239 (citing People v. Livingston, 53 Cal. 4th 1145 (2012)

17  (emphasis added)).)  The trial court satisfied this obligation.  It instructed the jury that "before

18  you may rely on circumstantial evidence to find the defendant guilty, you must be convinced that

19  the only reasonable conclusion supported by the circumstantial evidence is that the defendant is

20  guilty."  (ECF No. 10-3 at 110.)  Petitioner acknowledged in his traverse that the instruction could

21  be "effectively expressed in slightly different formulations" and included examples that are

22  similar to the instruction at issue.  (ECF No. 11 at 51 & n.28 ("'You may convict only if the facts

23  or circumstances are inconsistent with any reasonable hypothesis that negates guilt.'"))

24     Even assuming that the jury instruction was ambiguous, the state court's determination

25  that there was no reasonable likelihood that the jury applied the instruction in an unconstitutional

26  manner was not objectively unreasonable.  The instruction expressly stated that the jury must be

27  convinced that the "only reasonable conclusion" is guilt.  (ECF No. 10-3 at 110.)  The state court

28

1    reasonably concluded that no reasonable jury could understand this as permitting conviction "if it

2    could draw multiple inferences from the circumstantial evidence, one of which points to

3    innocence."  (ECF No. 10-8 at 239-40.)

4         Petitioner insists that the jury instruction does not adequately reflect California law and

5    improperly shifts the burden of proof.  (ECF No. 11 at 49-55.)  But the state court disagreed with

6    petitioner, finding that the instruction was correct under California law.  (ECF No. 10-8 at 240.)

7    It is axiomatic that a state court's interpretation of state law is binding on a federal habeas court.

8    Bradshaw v. Richey, 546 U.S. 74, 76 (2005); Estelle, 502 U.S. at 67-68.  Because this court

9    cannot second-guess the state court's interpretation of its own laws, this argument fails.  As does

10   petitioner's argument that the appellate court "tacitly permitted a Judicial Council task force on

11   jury instructions, which has not law-making power under the state constitution, to modify the law

12   set forth by the California Supreme Court."  (ECF No. 11 at 52.)

13        Lastly, petitioner cites Hicks v. Oklahoma, 447 U.S. 343 (1980), and In re Winship, 397

14   U.S. 358 (1970) to support his claim.  (ECF No. 1 at 10.)  Both are distinguishable.  In Hicks, the

15   Supreme Court held that petitioner was denied due process of law because the state court refused

16   to fix his 40-year sentence, which a state court had declared unconstitutional.  Hicks, 447 U.S. at

17   344-45 ("In this case Oklahoma denied the petitioner the jury sentence to which he was entitled

18   under state law, simply on the frail conjecture that a jury *might* have imposed a sentence equally

19   as harsh….")  Petitioner has not cited, nor is this court aware of, any authority declaring the

20   relevant jury instruction unconstitutional.  See People v. Ibarra, 156 Cal. App. 4th 1174, 1187

21   (2007) ("CALCRIM No. 224 correctly states the law.")   In Winship, the Supreme Court held that

22   the "constitutional safeguard of proof beyond a reasonable doubt" is "required during the

23   adjudicatory stage of a [juvenile] delinquency proceeding."  In re Winship, 397 U.S. at 368.

24   Here, petitioner does not challenge the state court's reasonable doubt jury instruction.  (ECF No.

25   10-3 at  107.)  This court concludes that the state court's decision was not contrary to, or an

26   unreasonable application of, clearly established Supreme Court authority and recommends

27   denying habeas relief on this claim.

28   ////

28

F.  Cumulative Error

In claim six, petitioner argues that the cumulative effect of the several trial errors not discussed above constitute a denial of due process.  (ECF No. 1 at 7-9; ECF No. 11 at 56-61.) This court addresses each claim individually before assessing the cumulative effect of the alleged errors.

1.  Ineffective Assistance of Counsel

First, petitioner argues that "[a]s noted in Claim Four, counsel abandoned a strong argument in favor of a weak one."  (ECF No. 1 at 8; <u>see also</u> ECF No. 11 at 61.)  As analyzed in depth above, this court concluded that the state court's rejection of petitioner's ineffective assistance of counsel claim was not objectively unreasonable.

2.  Jury Instruction on Circumstantial Evidence (CALCRIM No. 224)

Second, petitioner claims that "[a]s noted in Claim Five [c], the circumstantial-evidence instruction implanted the suggestion that the evidence had to 'point to' a conclusion that I acted in reasonable self-defense, rather than simply fail to rule that out as a reasonable possibility."  (ECF No. 1 at 8-9; <u>see also</u> ECF No. 11 at 48-56.)  As analyzed in depth above, this court concluded that the state court's rejection of petitioner's ineffective assistance of counsel claim was not objectively unreasonable.

3.  Jury Instruction on Mutual Combat (CALCRIM No. 3471)

Third, petitioner argues that the court erred in instructing the jury on mutual combat because it was inapplicable to his case.  (ECF No. 1 at 9; ECF No. 11 at 58.)  The relevant instruction reads as follows:

> A person who engages in mutual combat or who starts a fight has a right to self-defense only if:
>
> 1.  He actually and in good faith tried to stop fighting;
>
> 2.  He indicated, by word or by conduct, to his opponent, in a way that a reasonable person would understand, that he wanted to stop fighting and that he had stopped fighting;
>
> AND
>
> 3.  He gave his opponent a chance to stop fighting.

1    If the defendant meets these requirements, he then had a right to self-
     defense if the opponent continued to fight.

2

3    However, if the defendant used only non-deadly force, and the
     opponent responded with such sudden and deadly force that the
     defendant could not withdraw from the fight, then the defendant had
4    the right to defend himself with deadly force and was not required to
     try to stop fighting, communicate the desire to stop to the opponent,
5    or give the opponent a chance to stop fighting.

6    A fight is mutual combat when it began or continued by mutual
     consent or agreement. That agreement may be expressly stated or
7    implied and must occur before the claim to self-defense arose.

8    (ECF No. 10-3 at 135.)

9        In the last reasoned state court opinion, the California Court of Appeal considered this

10   claim and rejected it.

11   Defendant contends the court erred in instructing the jury on mutual
     combat pursuant to CALCRIM No. 3471, because there was no
12   evidence he either provoked the fight or engaged in mutual combat.
     We agree, but conclude the error was harmless.
13

14   It is well settled that "instructions *not* supported by substantial
     evidence should not be given. [Citation.] 'It is error to give an
15   instruction which, while correctly stating a principle of law, has no
     application to the facts of the case.' " (*People v. Ross* (2007) 155
     Cal.App.4th 1033, 1050 (*Ross* ).) "Evidence is '[s]ubstantial' for this
16   purpose if it is 'sufficient to "deserve consideration by the jury," that
     is, evidence that a reasonable jury could find persuasive.' " (*Id.* at pp.
17   1049–1050.)

18   As both parties concede, the doctrine of mutual combat as provided
     in CALCRIM No. 3471 requires " 'not merely the *combat*, but the
19   *preexisting intention to engage in it* ... be mutual.' " (*People v.
     Nguyen* (2015) 61 Cal.4th 1015, 1044, first italics added; *accord,
20   Ross, supra,* 155 Cal.App.4th at p. 1045 [the term " 'mutual combat'
     means not merely a reciprocal exchange of blows but one *pursuant
21   to mutual intention, consent, or agreement preceding the initiation
     of hostilities*"].) There "must be evidence from which the jury could
22   reasonably find that *both combatants actually consented or intended
     to fight before the claimed occasion for self-defense arose.*" (*Ross*, at
23   p. 1047.)

24   Here, no one testified defendant and Matthew shared a preexisting
     intent to fight at Nicole's house. Matthew testified he intended to hug
25   defendant when he approached defendant. Only after defendant
     allegedly pushed (and stabbed) Matthew did Matthew begin
26   punching defendant. While other witnesses contradicted Matthew's
     depiction of events, they also did not recount any preexisting
27   agreement to fight. For example, Nicole testified Matthew
     approached defendant requesting a hug but then sucker punched
28   defendant. Under her version, Matthew unilaterally attacked

30

defendant. Despite this contradictory evidence, under either scenario there was no mutual, preexisting agreement to fight.[6]

[N.6 Nor does the other evidence cited by the parties suggest a preexisting intention to engage in mutual combat. For example, the exchange of threatening texts was not directly related to the March 8 incident. Likewise, Matthew's testimony that defendant told Nicole to let Matthew into the house must be viewed in the context of Matthew's other testimony—i.e., that he no longer desired to fight when approaching defendant. We also note the prosecution conceded defendant was not the aggressor.]

Although the instruction on mutual combat should not have been given here, the error is harmless. (*People v. Clem* (1980) 104 Cal.App.3d 337, 344–345 [reversal required only if there is a reasonable probability that a result more favorable to the defendant would have been reached had the instruction not been given].) "[G]iving an irrelevant or inapplicable instruction is generally ' "only a technical error which does not constitute ground for reversal." ' " (*People v. Cross* (2008) 45 Cal.4th 58, 67.) When a court errs by giving a correct instruction that has no application to the facts of the case, the error does not amount to a constitutional violation and is reviewed under the standard articulated in *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson* ). (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129–1130.) "Under *Watson*, reversal is required if it is reasonably probable the result would have been more favorable to the defendant had the error not occurred." (*Id*. at p. 1130.)

The record reflects no such probability. The jury was instructed, pursuant to CALCRIM No. 200, that some of the instructions may not apply, depending on its findings about the facts of the case, and that the inclusion of a particular instruction did not mean the court was "suggesting anything about the facts." The jury was also instructed to first determine what the facts were, then follow the instructions that applied to the facts as it found them. Although there was insufficient evidence of mutual combat, we presume the jury, following the directive of CALCRIM No. 200, disregarded the inapplicable portions of CALCRIM No. 3471. (*See People v. Holloway* (2004) 33 Cal.4th 96, 152–153; *People v. Guiton, supra*, 4 Cal.4th at p. 1131 ["The jurors' 'own intelligence and expertise will save them from' the error of giving them 'the option of relying upon a factually inadequate theory.' "].) We further note the prosecutor did not argue the applicability of CALCRIM No. 3471 in his closing argument and, in fact, acknowledged "Matthew ... came in hot.... [¶] [and] defendant reasonably believed that the use of—the immediate use of force was necessary to defend against that danger." (*People v. Crandell* (1988) 46 Cal.3d 833, 870 [no harm where "instruction did not figure in the prosecutor's closing argument"].) And there is no evidence, such as questions from the jury, indicating the jury relied on the mutual combat instruction in reaching its verdict. For these reasons, it is not reasonably probable that defendant would have received a more favorable verdict had the mutual combat instruction not been given.

(ECF No. 10-8 at 240-42.)

1          "As we have stated above, however, the fact that the instruction was allegedly incorrect

2    under state law is not a basis for habeas relief." Estelle, 502 U.S. at 71-72.  An irrelevant or

3    incorrect jury instruction is grounds for habeas relief only if the error "so infected the entire trial

4    that the resulting conviction violates due process."  Id. at 72 (internal citation and quotation marks

5    omitted).  Courts must view the instruction in the context of all the instructions and the trial

6    record.  Id.  To determine whether an ambiguous jury instruction rises to a constitutional error,

7    courts ask whether "'there is a reasonable likelihood that the jury has applied the challenged

8    instruction in a way' that violates the Constitution."  Id. (quoting Boyde v. California, 494 U.S.

9    370, 380 (1990)).  But habeas relief is not automatically warranted if there was a constitutional

10   violation.  Petitioner must show that the error "had a substantial and injurious effect or influence

11   in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also

12   Ybarra v. McDaniel, 656 F.3d 984, 995 (9th Cir. 2011).

13         Here, the state appellate court found that "[a]lthough the instruction on mutual combat

14   should not have been given here, the error [was] harmless."  (ECF No. 10-8 at 241.)  This court

15   finds that the state court's decision was objectively reasonable.  The mutual combat instruction

16   was not erroneous under state law; it was merely irrelevant in this case.  The trial court instructed

17   the jury that certain instructions may not apply.

18                     Some of these instructions may not apply, depending on your
                       findings  about the facts of the case. Do not assume just because I
19                     give a particular instruction that I am suggesting anything about the
                       facts. After you have decided what the facts are, follow the
20                     instructions that do apply to the facts as you find them.

21   (ECF No. 10-3 at 104 (CALCRIM No. 200).)  Courts have found no constitutional error when the

22   there was no reasonable likelihood that the jury could be misled by the challenged jury

23   instruction.  See McNeil, 541 U.S. at 438 ("Given three correct instructions and one contrary one,

24   the state did not unreasonably apply federal law when it found that there was no reasonable

25   likelihood the jury was misled."); Bergara v. Cate, 536 F. App'x 744 (9th Cir. 2013); see also

26   Ayers v. Belmontes, 549 U.S. 7, 19-21 (2006); Brown v. Payton, 544 U.S. 133, 146-47 (2005).

27   Petitioner has not presented any evidence to suggest that the jury could have been reasonably

28   misled by this instruction.  Outside the presence of the jury, defense counsel objected to this

1    instruction but also stated that "I think if there's evidence of mutual combat, it's thin."  (ECF No.

2    10-6 at 89.)  The trial court noted that even with the instruction, defense counsel just has to argue

3    that there was no mutual combat and his client acted in self-defense.  (Id.)  In response, defense

4    counsel plainly stated "[t]hat's been our position the entire time."  (Id.)

5         Even assuming that the mutual combat instruction resulted in a constitutional error,

6    petitioner suffered no actual prejudice.  The Ninth Circuit has found that surplus jury instructions,

7    which are irrelevant to the jury verdict, could not have had a substantial and injurious effect on

8    the verdict.  See, e.g., James v. Woodford, 360 F. App'x 939, 940-41 (9th Cir. 2010); Sinay v.

9    Garcia, 243 F.3d 549 (9th Cir. 2000); Stanton v. Benzler, 146 F.3d 726, 729 (9th Cir. 1998).

10   Additionally, courts have concluded that there was no prejudice when the error was a single

11   instruction within the body of correct jury instructions.  See, e.g., Brown v. Tilton, 472 F. App'x

12   561, 562 (9th Cir. 2012).  Petitioner's feeling that the instruction "muddied the deliberative

13   waters" is insufficient to meet this exacting standard.  (ECF No. 11 at 58.)  There is no evidence

14   to suggest that petitioner would have received a more favorable outcome without the challenged

15   instruction.  As the state court noted, there is no indication in the record that the jury relied on the

16   mutual combat instruction to reach its guilty verdict.  This court concludes that the state court's

17   decision was not contrary to, or an unreasonable application of, clearly established Supreme

18   Court authority and recommends denying habeas relief on this claim.

19              4.   Prosecutorial Misconduct

20        Next, petitioner argues that the prosecutor "suggested repeatedly in argument that I

21   committed attempted murder, which he had not charged, implying that conviction of the charged

22   offense of assault with a deadly weapon would be a lenient outcome."  (ECF No. 1 at 9; see also

23   ECF No. 11 at 58-60; ECF No. 10-8 at 50-52.)

24        In the last reasoned state court opinion, the California Court of Appeal considered this

25   claim and rejected it.

26              Defendant first contends the prosecution engaged in misconduct by
             suggesting defendant was getting off lightly with an assault
27           conviction rather than one for attempted murder. Defendant argues
             the prosecution engaged in a deceptive method of persuasion by
28           suggesting defendant deserved harsher treatment than he would

receive via conviction. We disagree.

The standards governing review of misconduct claims are settled. Under state law, reversal is required "when a prosecutor uses 'deceptive or reprehensible methods to persuade either the court or the jury' [citation] and ' "it is reasonably probable that a result more favorable to the defendant would have been reached without the misconduct." ' " (*People v. Davis* (2009) 46 Cal.4th 539, 612.) Although it is not necessary to show the prosecutor acted in bad faith, a defendant asserting misconduct must show, " ' "[i]n the context of the whole argument and the instructions" [citation], there was "a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner." [Citation.] If the challenged comments, viewed in context, 'would have been taken by a juror to state or imply nothing harmful, [then] they obviously cannot be deemed objectionable.' " (*People v. Cortez* (2016) 63 Cal.4th 101, 130.)

Defendant concedes he did not object at trial to the alleged instances of misconduct he now raises on appeal. Nor did he request the jury be admonished. "A defendant generally ' ' 'may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—[he or she] made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety. [Citation.]' " [Citation.]' [Citation.] A defendant's failure to object and to request an admonition is excused only when 'an objection would have been futile or an admonition ineffective.' " (*People v. Fuiava* (2012) 53 Cal.4th 622, 679 (*Fuiava* ).)

Defendant asserts we should excuse his failure to object because doing so would have been futile and any admonishment ineffective. He cites *People v. Hill, supra*, 17 Cal.4th 800, 820 in support of his position. But this case is not on a par with the circumstances of *Hill*. "[D]efense counsel here was not faced with a ' "constant barrage of [the prosecutor's] unethical conduct" ' and counsel's objections did not provoke ' "the trial court's wrath." ' Unlike in *Hill*, the trial court in this case did not suggest before the jury that counsel was ' "an obstructionist," ' and was merely ' "delaying the trial with 'meritless' objections." ' " (*Fuiava, supra*, 53 Cal.4th at p. 680; *accord, People v. Friend* (2009) 47 Cal.4th 1, 29 [defense counsel's failure to object to alleged misconduct is excused "when the 'misconduct [is] pervasive, defense counsel [has] repeatedly but vainly objected to try to curb the misconduct, and the courtroom atmosphere was so poisonous that further objections would have been futile' "]; *People v. Dykes* (2009) 46 Cal.4th 731, 775 [exception to forfeiture rule does not apply when the case "did not involve counsel experiencing—as did counsel in Hill—a 'constant barrage' of misstatements, demeaning sarcasm, and falsehoods, or ongoing hostility on the part of the trial court, to appropriate, well-founded objections"].) As was the case in *Fuiava*, "[h]ere, the record does not establish that properly framed objections would have been in vain or provoked any 'wrath' on the part of the trial court; rather, all indications are that the court was reasonably responsive to defense objections throughout the trial," and was courteous and succinct in ruling on the objections of both parties. (*Fuiava*, at p. 680.) "There is no reason to suspect the

34

trial court was predisposed to overrule objections to the prosecutor's deeds (i.e., that an objection would have been futile), or that corrective actions, such as appropriately strong admonitions, would not have been able to cure any prejudicial effect on the jury had defendant requested them." (*Ibid.*) Accordingly, we do not excuse the failure to preserve prosecutorial misconduct claims below. Those claims were forfeited.

Nor does defendant's claim have merit. Nowhere in the record does the prosecution argue defendant deserved harsher treatment than he would receive if convicted of the charged offense. Instead, the statements at issue related to the extent of Matthew's injuries and defendant's "intent to kill."[4] Such comments are appropriate. " '[T]he prosecutor has a wide-ranging right to discuss the case in closing argument. He has the right to fully state his views as to what the evidence shows and to urge whatever conclusions he deems proper. Opposing counsel may not complain on appeal if the reasoning is faulty or the conclusions are illogical because these are matters for the jury to determine.' " (*People v. Thomas, supra*, 2 Cal.4th at p. 526.) In *Thomas*, for example, the defendant alleged the prosecutor engaged in misconduct by inviting the jury to speculate that a murder was sexually motivated. (*Ibid.*) The Supreme Court framed the issue as whether the inference of possible motive "found some basis in the evidence, or was instead based on mere suspicion, imagination, speculation, surmise, conjecture, or guesswork." (*Id.* at p. 527.) The court ultimately rejected the argument, concluding the "comments here had a sufficient evidentiary basis." (*Ibid.*)

[N. 4 While defendant argues these statements implied he committed attempted murder, these comments were made in the context of whether he exercised a reasonable degree of force when acting in self-defense. (*People v. Dennis, supra*, 17 Cal.4th 468, 522 ["we must view the statements in the context of the argument as a whole"].) Accordingly, we view these statements as addressing whether defendant responded with reasonable force.]

Here, the statements regarding the extent of Matthew's injuries are directly drawn from the evidence presented by Dr. Zopfi. He testified Matthew required 40 minutes of resuscitation and was placed on a ventilator. He described the various injuries on Matthew, including a 14-centimeter laceration on his neck, a 12-centimeter laceration along the jaw, and a 16-centimeter laceration on his forehead. Zopfi noted one laceration was down to the skull and transected the temporal artery, and one laceration transected the external jugular vein. He estimated Matthew lost approximately 30 to 35 percent of his total blood volume and would have died within 30 to 40 minutes from his injury without control of the hemorrhage. The prosecutor's comments regarding defendant's intent to kill are also supported by testimony. Matthew and Nicole's daughter testified defendant said, "Nigga, I'm going to come find you and kill you," when Matthew was leaving Nicole's residence. The prosecutor's comments were thus based in the evidence and did not amount to deceptive or reprehensible methods of persuasion.

(ECF No. 10-8 at 235-38.) Because this claim can be resolved on the merits, this court need not

35

1    address the procedural challenges.

2         On the merits, petitioner argues that "state court's treatment was an unreasonable

3    determination of the facts." (ECF No. 11 at 60.) This court disagrees. In his appellate brief,

4    petitioner indicates which comments he considers inappropriate. (ECF No. 10-8 at 50-51.) After

5    reviewing the trial record, this court finds that the state court reasonably concluded that the

6    prosecutor's comments were appropriate. His remarks fall into two categories. First, some of the

7    prosecutor's comments addressed whether petitioner exercised a reasonable degree of force when

8    acting in self-defense. (ECF No. 10-6 at 271 ("Seven stab wounds, a slit throat; [Hamilton]

9    stumbled out of 1773 Enterprise Drive, clinging to death, clinging to life, clinging to anything to

10   survive; and luckily he made it, but he was close. He was very close, and he was close because of

11   the defendant and what the defendant did to him."); id. at 272 ("He wanted to kill Matthew

12   Hamilton, straight up. He used deadly force; and he almost did. Remember, he was thirty

13   minutes away from dying. That was the evidence you heard."); id. at 281 (describing the

14   reasonable force requirement); id. at 297 ("This is directed. This is an attack. This is purposeful.

15   You don't just get a slit across your neck by chance, by accident."); id. at 299 ("The defendant

16   does not have a scratch on him two days later. The victim almost died. He's in critical condition.

17   He lost 35 percent of his total blood. Is that necessary? Did he need to do that?"); ECF No. 10-7

18   at 20-21 ("[Defendant] knows that there's no weapon there, [defendant] can't stab [Hamilton]

19   seven times and slit his throat. And again, these are targeted injuries … All of the injuries are

20   concentrated in the kill zone, in the area where you're going to die, if you get serious injuries to

21   it.").) This is consistent with the prosecutor's central theme that the victim's "injuries are the key

22   to whether or not the defendant was acting in lawful self-defense." (ECF No. 10-6 at 275; ECF

23   No. 10-7 at 22 (Arguing that "even if you give [defendant] the benefit of the doubt, you still can't

24   use that amount of force. It's unbelievable, to slit his throat in this situation…."))  Second, the

25   prosecutor's remaining comments were accurate restatements of the trial testimony. For example,

26   an expert testified that Hamilton would have died in 30 or 40 minutes without emergency surgery,

27   and the prosecutor argued that Hamilton was close to dying after the altercation. (Compare ECF

28   No. 10-6 at 42 to ECF No. 10-6 at 271, 295.) As another example, two witnesses testified that

1    petitioner was holding two knives, and prosecutor argued that petitioner had two knives because

2    he was "waiting" for Hamilton.  (Compare ECF No. 10-5 at 120-21, 184, 220-21 to ECF No. 10-6

3    at 296.)  This court does not recommend overturning the state court's factual findings because

4    they were objectively reasonable in the context of the entire trial record.

5            To the extent that petitioner presents a legal challenge to the state court's findings, he has

6    a difficult standard to meet.  A prosecutor's comments constitute misconduct if they "so infected

7    the trial with unfairness as to make the resulting conviction a denial of due process."  Darden v.

8    Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly, 416 U.S. at 643); see also Parker v.

9    Matthews, 567 U.S. 37, 45 (2012).  The "appropriate standard of review for such a claim on writ

10   of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory

11   power.'"  Darden, 477 U.S. at 181 (quoting Donnelly, 416 U.S. at 642).  For "trial type"

12   constitutional errors, including prosecutorial misconduct, habeas relief is warranted only if the

13   errors "had substantial and injurious effect or influence in determining the jury's verdict."

14   Brecht, 507 U.S. at 637-38 (internal quotation marks omitted).  Here, petitioner has not provided

15   any evidence suggesting that the trial was unfair.  The trial judge instructed the jury that

16   "[n]othing that the attorneys say is evidence. In their opening statements and closing arguments,

17   the attorneys discuss the case, but their remarks are not evidence."  (ECF No. 10-3 at 108.)  In

18   closing arguments, the prosecutor did not misstate or manipulate the evidence.  Nor did he

19   implicate other rights of the accused such as his right to remain silent or his right to counsel.  See

20   Darden, 477 U.S. at 181-82.  His claim, therefore, fails.  The state court's decision was not

21   contrary to, or an unreasonable application of, clearly established federal law, or that such a

22   finding was based on an unreasonable application of the facts.

23                   5.   Failure to Instruct on Prosecutorial Immunity (CALCRIM No. 226)

24           Petitioner asserts that the court improperly "excluded a state-law required [jury

25   instruction] calling the jury's attention to the role of a grant of prosecutorial immunity to the

26   complaining witness in exchange for testimony."  (ECF No. 1 at 9; see also ECF No. 11 at 60-61;

27   ECF No. 10-8 at 60-63.)

28           In the last reasoned state court opinion, the California Court of Appeal considered this

1   claim and rejected it.

2       Defendant next contends the trial court erred by failing to instruct the
3   jury that a grant of immunity is a factor to consider when evaluating
    credibility. We disagree.

4       CALCRIM No. 226 is the pattern instruction on determining the
5   credibility of a witness. (*People v. Anderson* (2007) 152 Cal.App.4th
    919, 934–936.) The introductory paragraphs state in part: "You alone
6   must judge the credibility or believability of the witnesses. In
    deciding whether testimony is true and accurate, use your common
7   sense and experience.... [¶] In evaluating a witness's testimony, you
    may consider anything that reasonably tends to prove or disprove the
8   truth or accuracy of that testimony." (CALCRIM No. 226.) The
    pattern instruction lists numerous factors for the jury to consider as
9   to a witness's credibility, including whether the witness is influenced
    by any bias, prejudice, or a personal interest in how the case is
10  decided. (*Ibid.*) The pattern instruction also has various optional or
    "bracketed" witness credibility factors that may be included—when
11  relevant—based on the evidence presented. (*Ibid.*; *People v. Horning*
    (2004) 34 Cal.4th 871, 910 [court "may omit factors that are
12  inapplicable under the evidence"].) One such bracketed factor states:
    "Was the witness promised immunity or leniency in exchange for his
13  or her testimony?" (CALCRIM No. 226.)

14      Here, defendant asserts the interview between Matthew and the
15  police constitutes such a promise of immunity or leniency.
    Specifically, during the interview Matthew expresses concern
16  regarding whether he would be charged for his conduct. In response,
    the police officers responded that it was "not our job" and "the DA
17  will look at it," but "There's nothing that you've explained to me so
    far that I can see a crime in." The police also stated, "We're not gonna
18  charge you with anything," and explained the "major lacerations" on
    Matthew's face and neck were "our main concern right here."

19      Nothing in *People v. Rincon-Pineda* (1975) 14 Cal.3d 864, nor any
20  other case cited by defendant, requires the inclusion of the bracketed
    factor on immunity in the trial court's witness credibility instruction.
21  Nor are we aware of any such authority requiring inclusion of this
    factor under similar circumstances. Moreover, CALCRIM No. 226
22  specifically states: "In evaluating a witness's testimony you may
    consider anything that reasonably tends to prove or disprove the truth
23  or accuracy of that testimony." The jurors were thus free to draw
    whatever conclusion they wished to draw from Matthew's exchange
    with the police.

24      Finally, even if we were to deem the omission of the bracketed
25  credibility factor from the given CALCRIM No. 226 instruction to
    constitute error, we would find such an error harmless. CALCRIM
26  No. 226, as given, instructed the jury to "Consider the testimony of
    each witness" and to "consider anything that reasonably tends to
27  prove or disprove the accuracy of that testimony." In addition,
    defendant did not argue at trial that Matthew's credibility was
28  suspect due to any alleged agreement of immunity or lenience.
    Accordingly, we see no reasonable probability that defendant would

1
2
have obtained a more favorable outcome had the bracketed credibility factor been included in the CALCRIM No. 226 instruction given to the jury. (*Watson, supra*, 46 Cal.2d at p. 836.)

3
(ECF No. 10-8 at 242-44.)

4      First, petitioner claims that the state appellate court "inaccurately" recounted the facts

5 relevant to this claim.  More specifically, he asserts that "not only was there an exchange with

6 police strongly suggesting that Hamilton could talk freely because he would not be prosecuted,

7 but, when Hamilton spoke with the prosecutor, the latter confirmed that no charges would be

8 filed."  (ECF No. 11 at 60 (internal citations omitted).)  Under § 2254(d)(2), a state court decision

9 based on a factual determination is not to be overturned on factual grounds unless it is

10 "objectively unreasonable in light of the evidence presented in the state court proceeding."

11 Stanley, 633 F.3d at 859 (quoting Davis, 384 F.3d at 638).

12      After reviewing the trial record, this court concludes that the state appellate court's

13 recitation of the facts was not objectively unreasonable.  Petitioner admitted that "there was no

14 testimony that there was an exchange of testimony for immunity."  (ECF No. 10-8 at 211.)

15 Without direct evidence of prosecutorial immunity, this court looks to circumstantial evidence in

16 the record.  At best, the evidence shows that Hamilton expressed concern that he was in trouble

17 for his actions, and the police and district attorney explained that he was not being charged.  (ECF

18 No. 10-4 at 5, 10, 14-15; ECF No. 10-5 at 152-53.)  During the police interview, the police told

19 Hamilton that "[t]here's nothing that you've explained to me so far that I can see a crime in" and

20 they were primarily concerned about his injuries.  (ECF No. 10-4 at 14.)  Just because petitioner

21 can conjure up a list of crimes he thinks Hamilton committed does not mean the police should

22 have charged Hamilton or that Hamilton was granted prosecutorial immunity for this testimony.

23 The police did not believe Hamilton committed a crime, therefore, there was no need to offer

24 prosecutorial immunity for his testimony.

25      Petitioner then argues that the jury instruction does not adequately reflect California law

26 because it excluded immunity as a factor in the witness credibility instruction.  The state court

27 rejected this argument, finding that no "authority requiring inclusion of this fact under similar

28

1  circumstances." (ECF No. 10-8 at 243.)  As stated above, a state court's interpretation of state

2  law is binding on a federal habeas court.  <u>Richey</u>, 546 U.S. at 76; <u>Estelle</u>, 502 U.S. at 67-68, 71-

3  72.  This court declines petitioner's invitation to second-guess that decision on habeas review.

4          To the extent that petitioner is contesting the state appellate court's finding that any

5  alleged error was harmless, this argument also fails.  As this court articulated earlier, an incorrect

6  jury instruction is grounds for habeas relief only if the error "so infected the entire trial that the

7  resulting conviction violates due process."  <u>Estelle</u>, 502 U.S. at 72  (internal citation and quotation

8  marks omitted).  Courts must view the instruction in the context of  the entire record and assess

9  whether there was a reasonable likelihood that the jury misinterpreted the instruction in manner

10  that would violate the Constitution.  <u>Id.</u>  If there was a constitutional violation, petitioner must

11  show that the error "had a substantial and injurious effect or influence in determining the jury's

12  verdict."  <u>Brecht</u>, 507 U.S. at 623; <u>see also</u> <u>Ybarra</u>, 656 F.3d at 995.

13          Here, the alleged error did not have a substantial or injurious effect on the jury's verdict

14  for two reasons.  First, the trial court instructed the jury that it "alone must judge the credibility or

15  believability of the witnesses."  (ECF No. 10-3 at 111.)  The witness credibility instruction also

16  stated "[y]ou may believe all, part, or none of any witness's testimony. Consider the testimony of

17  each witness and decide how much of it you believe. In evaluating a witness's testimony, you

18  may consider anything that reasonably tends to prove or disprove the truth or accuracy of that

19  testimony."  (<u>Id.</u>)  Second, both the prosecutor and defense counsel called Hamilton's credibility

20  into question during closing arguments.  (ECF No. 10-6 at 272 (prosecutor stating that "he's not

21  perfect…I know there are things that he didn't tell the truth about, and you know it, too"); <u>id.</u> at

22  273-74; <u>id.</u> at 302 (defense counsel claiming that Hamilton lied during his testimony); ECF No.

23  10-7 at 4-5.)  At the end of his closing argument, defense counsel claimed it was unjust that

24  Hamilton was not facing criminal charges.  (ECF No. 10-7 at 18 ("The district attorney has

25  promised Mr. Hamilton that despite throwing a knife, despite picking up a bat and causing this

26  injury, despite sucker punching somebody and entering a house that you have absolutely no

27  business in, they've told him, 'Hey, I think it's unlikely you're ever going to be charged with

28  anything?  Where is the justice?").)  The jury, therefore, had an opportunity to consider this

1  evidence in reaching its verdict.  The state court's decision was not contrary to, or an

2  unreasonable application of, clearly established federal law, or that such a finding was based on

3  an unreasonable application of the facts.  Accordingly, this court recommends denying habeas

4  relief on this claim as well.

5               6.   Cumulative Error

6       Lastly, petitioner collectively argues that these combined errors violated his right to due

7  process.  (ECF No. 1 at 8-9; ECF No. 11 at 56-58; see also ECF No. 10-8 at 47-50, 179-86, 215-

8  20.)

9       In the last reasoned state court opinion, the California Court of Appeal considered this

10  claim and rejected it.

11          Defendant raises two arguments regarding his due process right to a
           fair trial. First, defendant contends that the cumulative effect of the
12         purported errors undermined the fundamental fairness of the trial.
           However, as we have " 'either rejected on the merits defendant's
13         claims of error or have found any assumed errors to be
           nonprejudicial,' " we reach the same conclusion with respect to the
14         cumulative effect of the purported errors. (*People v. Cole* (2004) 33
           Cal.4th 1158, 1235–1236, quoting *People v. Sapp* (2003) 31 Cal.4th
15         240, 316.)

16          Second, defendant argues reversal is required because his trial was
           fundamentally unfair, even if such unfairness was not the result of
17         any error. In support of this argument, defendant relies *on People v.
           Chambers* (1964) 231 Cal.App.2d 23 (*Chambers* ). *Chambers* is
18         distinguishable. In *Chambers*, the owner of a convalescent home was
           charged with one count of assault on a patient in a convalescent
19         home. He was jointly tried with an employee who had been charged
           with three separate assaults on patients, none of which were the same
20         assault the defendant was charged with. (*Id*. at pp. 24–25.) Defense
           counsel had stipulated to a joint trial and did not object to the
21         "voluminous evidence of unrelated acts of brutality by [the
           employee], admissible only because she was on trial for offenses
22         unrelated to that charged against [the defendant]." (*Id*. at p. 27.) The
           jury was not admonished about the limited admissibility of the
23         evidence. (*Id*. at pp. 27–28.) Further, there was irrelevant evidence
           that suggested the defendant and his employee shared a bed. (*Id*. at
24         p. 28.) As a result, the appellate court concluded the defendant was
           probably convicted based on his employment and romantic
25         relationships with his employee, rather than by evidence of his
           personal guilt. (*Id*. at p. 28.) The appellate court stated, even though
26         no motion for severance had ever been made: "The record impresses
           us with the belief that [the defendant] was probably fastened with
27         vicarious responsibility for the long-continued brutality of [the
           employee], in the absence of any charge of concerted or
28         conspiratorial action." (*Id*. at p. 29.)

                                 41

1
2
3
4
5
6
7
8

> *Chambers* thus involved a different issue, that is, review of a decision to consolidate or to sever. Normally, review of a trial court's decision to consolidate or sever trials is based on the evidence available to the trial court at the time it made the ruling. (*People v. Hardy* (1992) 2 Cal.4th 86, 167.) This review standard does not evaluate what actually occurred at trial. *Chambers*, and those cases following *Chambers*, recognize in some cases consolidation may result in gross unfairness due to a defendant being convicted based on guilt by association with a codefendant. In those cases, despite the lack of objection or error associated with consolidation, reversal is merited. (*Chambers, supra*, 231 Cal.App.2d at pp. 28, 34; *accord, People v. Ervin* (2000) 22 Cal.4th 48, 68–69.) *Chambers* and its progeny do not create a general rule that a defendant is entitled to appellate review of a claim that was waived below or reversal in the absence of any error.[7]

9
10
11
12
13
14
15

> [N.7 Defendant also argues *People v. Romero and Self* (2015) 62 Cal.4th 1, supports his position because a similar argument was raised by the parties on appeal. To this end, on February 19, 2018, defendant filed an unopposed request for judicial notice of certain briefs filed in that appeal. We grant that request. (Evid. Code, § 452, subd. (d).) However, the fact that the parties raised a similar argument in *Romero and Self* does not suggest the Supreme Court found it to have any merit. To the contrary, it was summarily rejected. (*Romero and Self*, at p. 58 ["We further conclude this error and any assumed error are not prejudicial when considered cumulatively, nor have defendants otherwise demonstrated that they were denied a fair trial."].)]

16
17
18

> Here, we are not faced with a consolidation issue or the prospect defendant may have been convicted due to inflammatory evidence and guilt by association with a codefendant. Instead we have evidentiary and instructional challenges, none of which raise issues that were unduly inflammatory. Under these circumstances, we reject defendant's claim that he was denied a fair trial.

19    (ECF No. 10-8 at 244-45.)

20          The Ninth Circuit has concluded that under clearly established United States Supreme

21    Court precedent the combined effect of multiple trial errors may give rise to a due process

22    violation if it renders a trial fundamentally unfair, even where each error considered individually

23    would not require reversal.  Parle v. Runnels, 505 F.3d 922, 927 (9th. Cir. 2007) (citing Donnelly,

24    416 U.S. at 643, and Chambers v. Mississippi, 410 U.S. 284, 290 (1973)).  "[T]he fundamental

25    question in determining whether the combined effect of trial errors violated a defendant's due

26    process rights is whether the errors rendered the criminal defense 'far less persuasive,' and

27    thereby had a 'substantial and injurious effect or influence' on the jury's verdict."  Parle, 505 F.3d

28    at 928 (internal citations omitted); see also Hein v. Sullivan, 601 F.3d 897, 916 (9th Cir. 2010)

1    (same).

2         This court has addressed each of petitioner's claims and has concluded that no error of

3    constitutional magnitude occurred.  This court also concludes that the alleged errors, even when

4    considered together, did not render petitioner's defense "far less persuasive," nor did they have a

5    "substantial and injurious effect or influence on the jury's verdict."

6         Next petitioner asserts that, even without any trial errors, he is still entitled to reversal

7    because his trial was fundamentally unfair.  (ECF No. 10-8 at 179-80, 215-20; ECF No. 11 at 57-

8    58.)  In support of his argument, he cites three cases, but all of them are inapposite.  In Taylor v.

9    Kentucky, 436 U.S. 478, 490 (1978), the Supreme Court held that the trial court's refusal to give

10   a presumption of innocence jury instruction violated defendant's right to a fair trial.  Petitioner,

11   however, does not allege that such a violation occurred in this case.  Second, in Alcala v.

12   Woodford, 334 F.3d 862, 865 (9th Cir. 2003), the Ninth Circuit concluded that defendant's trial

13   suffered from multiple constitutional errors, imposing a substantial and injurious effect on the

14   jury's verdict.  This case is distinguishable because petitioner's trial did not suffer from multiple

15   constitutional errors.  Petitioner seemingly agrees that this case "is not directly on point."  (ECF

16   No. 11 at 57-58.)  Lastly, in People v. Chambers, 231 Cal. App. 2d 23, 28 (1964), the state

17   appellate court determined that "defendant was probably convicted by association with [his co-

18   defendant], in trial and otherwise, rather than by evidence of his personal guilt, that an unfairness

19   so gross has occurred as to deprive him of due process of law."  Here, petitioner was not tried

20   with any other persons.

21        Finally, petitioner claims that the fact that the jury deliberated for only three hours "is

22   strong evidence that improper factors greased the skids for conviction."  (ECF No. 11 at 58.)

23   Petitioner fails to cite any authority to support his claim.  Mere speculation as to why the jury

24   deliberated for the time it did is insufficient to support a constitutional violation.  The length a

25   jury deliberated may have more to do with the strength of the prosecution's case rather than any

26   alleged errors that occurred at trial.

27        Accordingly, petitioner is not entitled to relief on his claim of cumulative error.  This

28   court recommends denying relief on this claim.

VI.  Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 15, 2022

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/inpr0643.157

44